IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| WYATIENA WHITAKER, for L.B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-029 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Wyatiena Whitaker ("Plaintiff"), proceeding on behalf of her now twelve year-old son, L.B. ("Claimant") appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

## I.      BACKGROUND

Plaintiff protectively applied for SSI on behalf of Claimant on November 22, 2010, alleging a disability onset date of August 1, 2007. Tr. ("R."), pp. 127-32. The Social Security Administration denied Plaintiff's application initially, R. 60-65, and on reconsideration, R. 73-76. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 78, and

the ALJ held a hearing on November 7, 2012. R. 32-59. At the hearing, the ALJ heard testimony from Plaintiff and Claimant, who were represented by counsel. Id. On January 2, 2013, the ALJ issued an unfavorable decision. R. 11-27.

Applying the three-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1.   The claimant has not engaged in substantial gainful activity since November 22, 2010, the application date (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*).

2.   The claimant has the following severe impairment: borderline intellectual functioning and moderate limits in receptive/expressive communication (20 C.F.R. § 416.924(c)).

3.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926(a)). Thus, the claimant has not been disabled, as defined by the Social Security Act, from November 22, 2010 through January 2, 2013 (20 C.F.R. § 416.924(a)).

R. 23-32.

When the Appeals Council denied Plaintiff's request for review on December 9, 2013, R. 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision.

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in determining that Claimant's ADHD and speech impairment were not severe impairments; (2) the ALJ erred in evaluating Claimant's subjective symptoms; (3) the

ALJ erred in finding that Claimant did not meet Listing 112.11 for Attention Deficit Hyperactivity Disorder ("ADHD"); (4) the ALJ erred in weighing the medical evidence of record; and (5) the ALJ erred in determining that Claimant's impairments did not functionally equal the severity of the Listings. (See doc. no. 14 ("Pl's Br."), pp. 4-14.) Alternatively, Plaintiff contends that the case should be remanded under sentence six of 42 U.S.C. § 405(g) to consider new evidence in the form of a developmental assessment performed by Dr. Karen Carter on May 2, 2013, and a report by Nancy Jones, a speech language pathologist. See Pl's Br., pp. 15-23.

The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 15 ("Comm'r's Br.").) Additionally, the Commissioner maintains that the case should not be remanded for the ALJ to consider the new evidence because it would not change the ALJ's decision and no good cause has been shown for failing to submit the evidence at the administrative stage. Id. at 16-18.

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole

record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The Three-Step Sequential Process to Evaluate Disability in Children.

A three-step sequential process is used to determine whether a child is disabled. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the claimant's impairments meet, medically equal, or functionally equal the Listings. Id. § 416.924(d). If the claimant does not have an impairment that meets, medically equals, or functionally equals the Listings, he will not be found disabled. Id. § 416.924(d)(2).

### B. The ALJ Properly Found Claimant's ADHD and Speech Impairment to Be Not Severe.

Plaintiff appears to argue that the ALJ did not properly assess Claimant's severe and nonsevere impairments but does not cite any case law to support this point.[1] (Pl.s' Br., pp. 4-5.) However, the record demonstrates that the ALJ's determination at step two is supported by substantial evidence.

At the second step of the sequential evaluation process, if the claimant does not have "a medically determinable impairment, or [the] impairment(s) is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," the ALJ will find

---

[1] Plaintiff cites only one case in her entire brief, a case from the Northern District of Iowa. This is in contradiction to the Court's June 4th Order requiring legal arguments to be supported by citations to legal authority primarily from the Eleventh Circuit. (See doc. no. 12, p. 2.)

that the claimant does not have a severe impairment and therefore not disabled. 20 C.F.R. §
416.924(c). The severity test at step two of the sequential process is designed to screen out only
clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (describing
severity test as an "administrative convenience designed to screen out groundless claims").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v.
Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (citing Brady, 724 F.2d 914). Under this test, "an
impairment can be considered as not severe only if it is a slight abnormality which has such a
minimal effect on the individual that it would not be expected to interfere with the individual's ability
to work, irrespective of age, education, or work experience." Id. As the Eleventh Circuit has
explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial
impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and
"the claimant need only show that an abnormality's effect is not so minimal that it would not
interfere with his ability to work irrespective of age, education, or work experience." Cantrell v.
Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986).

The ALJ acknowledged that Plaintiff had been treated for ADHD and speech
impairment. R. at 14-15. However, the ALJ found those impairments to be non-severe
because there was no evidence in the medical record to indicate that they imposed any
functional limitations on Plaintiff. R. at 14. With respect to ADHD, the ALJ noted that in
2012, Joseph Jackson, M.D., diagnosed Plaintiff with ADHD and prescribed Vyvanse for
treatment of this condition. R. at 14, 395, 404. Dr. Jackson did not indicate that ADHD
limited Plaintiff's functional ability in any way. R. at 19, 394-395, 404-405. Although the
educational record reflected that Plaintiff was enrolled in an Individualized Educational Plan

("IEP") through which Claimant received special accommodations such as separate classes, individualized instruction, speech therapy sessions, and extended time for assignments, the ALJ could find nothing in the record to suggest that ADHD necessitated these accommodations. Indeed, as the ALJ explained, the accommodations were made because of Claimant's borderline intellectual functioning and communication needs. R. at 17. Accordingly, the ALJ was correct in finding that ADHD did not pose more than a minimal limitation on his functional ability. R. at 14, 207-303, 327-43.

For instance, Plaintiff's educational record did not reflect disciplinary problems or behavioral problems attributed to this condition. R. at 14, 207-303, 327-343. At the hearing, Plaintiff's mother stated that Plaintiff had no behavior problems in the home and that her primary concern was Plaintiff's inability to learn at a level appropriate for his age due to his borderline intellectual functioning. R. at 14, 45-46. Moreover, a progress report from the first quarter of the 2012-2013 school year revealed that Plaintiff was passing all of his classes with three A's, and four C's. R. at 14, 247. Overall, Plaintiff's progress reports reflected that he was doing better even though he required the additional help and support provided by the school through the IEP. R. at 14-15.

Although Plaintiff attempts to minimize Claimant's academic progress by claiming "the grades are in IEP courses," the record affirmatively demonstrates the IEP was utilized to support his progress in normal classroom settings rather than replace it. (Pl.'s Br. at 5; see R. at 238.) In addition, Dr. Adrian Janit, a consultative psychological examiner, evaluated Claimant's learning ability, visual-motor skills, and overall intellectual functioning and found that Claimant's ability to maintain attention and concentration was not limited in that he seemed to be able to attend and

focus throughout the evaluation without many breaks. R. at 362. Substantial evidence supports the ALJ's determination that Claimant's ADHD had no more than minimal effect on his functional ability.

With respect to Claimant's speech and communication limitations, the ALJ cited a report by Nancy Berryhill, a speech-language pathologist, who found his overall intelligibility was good with articulation skills within normal limits but with some sound errors, and no abnormal deficiencies in Plaintiff's conversational speech. R. at 15, 346, 347. The ALJ did include moderate limitations of expressive and receptive communication as severe impairments based on Ms. Berryhill's findings that Claimant exhibited a moderate delay of expressive and social language, and a severe-profound delay of receptive language. Based on those findings, the ALJ concluded that Claimant's speech impairment was not severe. R. at 14. In recognizing Ms. Berryhill's finding of moderate limitations in expressive and receptive communication, the ALJ carefully parsed Ms. Berryhill's report and correctly found nothing to suggest a speech impairment to be more than a minimal limitation.

In any event, by finding that Plaintiff had severe impairments, the ALJ found in Plaintiff's favor at step two and proceeded with the third step of the sequential evaluation process. Thus, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [the claimant] had a severe impairment: and that finding is all that step two requires." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 824-25 (11th Cir. 2010). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe. Instead, at step three, the ALJ is required to demonstrate that he has considered all of the

claimant's impairments, whether severe or not, in combination." Id. at 825. Here, it is clear that the ALJ considered all of Claimant's impairments in combination, severe and not severe, when determining whether Claimant meets a listing or functionally equals the severity of a listing as discussed below. R. at 15.

### C. The ALJ Properly Found Plaintiff's Subjective Complaints Less than Fully Credible

Under the Eleventh Circuit's three-part standard for evaluating a claimant's subjective complaints, a plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); see also Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); see also Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 832 (11th Cir. 2013).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted). For an individual under age 18 claiming disability benefits under Title XVI who is unable to adequately describe his or her symptom(s), the adjudicator will accept the description given by the person most familiar with the individual, such as a parent, other relative, or guardian. 20 CFR 416.928(a); SSR 96-7P, 1996 WL 374186, n.2.

Plaintiff primarily takes issue with the ALJ's credibility determination as to her statements regarding Claimant's alleged disabling symptoms. Pl.'s Br., pp. 6-7. Plaintiff testified at the hearing that Claimant (1) had trouble focusing on tasks, sitting still, following directions, (2) made C's, D's, and F's in school with a delay in reading comprehension, and (3) had a disability in the form of delayed learning because he was not on the education level of an average ten year-old. R. at 45-57.

The ALJ gave multiple reasons for finding Plaintiff's testimony less than fully credible, and in so doing relied on substantial evidence. In regards to Plaintiff's alleged inattention, hyperactivity, and inability to follow directions, the ALJ cited Dr. Janit's report finding that Claimant's focus and inattention was not limited, and Kate Mobley, Claimant's teacher, who reported no problems in his ability to focus on and complete tasks. R. at 19; 20 C.F.R. § 416.924a (requiring teacher questionnaires to be considered by the ALJ). The ALJ also cited Dr. Jackson's lack of indication as to any loss in his functional abilities when diagnosing Claimant with ADHD. R. at 19. The ALJ cited Dr. Janit's report finding that Claimant's focus and attention was not limited, and Kate Mobley, Claimant's teacher, who reported no problems in his ability to focus on and complete tasks. R. at 19; 20 C.F.R. § 416.924a (requiring teacher questionnaires to be considered by the ALJ). Thus, the ALJ relied on substantial evidence in

discounting Plaintiff's statements that Claimant was disabled due to his inattention.

In regards to Plaintiff's testimony that Claimant made C's, D's, and F's in school with a delay in reading comprehension and was not on the educational level of an average ten-year old, the ALJ cited his report card from 2012-2013 showed passing grades in all classes with 3 A's and 4 C's. R. at 20. This was in contrast to Plaintiff's statement that Claimant makes C's, D's, and F's. Indeed, the record showed that Claimant was actually passing his reading and language arts classes. Id. Claimant's progress notes also reflected that he was improving but still needed additional support and help through the IEP. R. at 20. In addition, the ALJ cited a school psychological report from February 2012 demonstrating that Claimant was functioning within the average range of intellectual functioning on the Reynolds Intellectual Assessment. R. at 20. Accordingly, the ALJ relied on substantial evidence in discounting Plaintiff's statements concerning Claimants' academic development and intellectual functioning.

In sum, the ALJ gave numerous explicit reasons for not fully crediting Plaintiff's testimony as to Claimant's symptoms. The reasons given by the ALJ are more than adequate and based on substantial evidence. See Foote, 67 F. 3d at 1561-62.

**D.    The ALJ's Decision that Claimant Did Not Meet Listing 112.11 Is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ erred in determining that Claimant did not meet Listing 112.11 for ADHD because the ALJ purportedly ignored all of the school educational documents, Plaintiff's testimony, and the medical records that support a finding of marked inattention, marked impulsiveness, and marked hyperactivity. The record directly contradicts this naked assertion, unsupported by any citations to case law or regulations, made by Plaintiff

The claimant bears the burden of presenting specific medical findings to show he meets a Listing. Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that his impairment meets a Listing, a claimant needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severe, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). In order to meet the requirements of Listing 112.11, a child between the ages of three and eighteen must show (1) medically documented findings of marked inattention, impulsiveness and hyperactivity, and (2) a marked impairment in two of the following: age-appropriate cognitive/communicative function; age-appropriate social functioning; age-appropriate personal functioning; or maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 112.11.

The ALJ found that there were no medically documented findings showing marked inattention, marked impulsiveness, and marked hyperactivity. R. at 15. On the contrary, as the ALJ explained, Dr. Janit conducted her examination on June 21, 2011 and found that (1) Claimant's ability to understand and carry out instructions was minimally limited because Claimant was able to comprehend and comply with most requests made of him during the evaluation; (2) Claimant's ability to maintain attention and concentration was not limited in that he seemed able to attend and focus throughout the evaluation without many breaks; (3) Claimant's ability to respond appropriately to teachers, peers, and the general public was not limited in that he reported getting along with others very well and his teachers denied any conduct problems; and (4) Claimant's ability to adhere to a school schedule and complete tasks in a timely fashion was mildly limited because his level of his cognitive functioning could impede his completion of tasks. R at 19-21, 362. The ALJ also noted that Dr. Jackson

did not indicate Plaintiff's ADHD limited his functional capacity, and the school records did not reflect discipline problems or behavior problems attributable to ADHD.   R. at 14, 19, 404-405.

In sum, substantial evidence supports the ALJ's determination of no medically documented findings of marked inattention, marked impulsiveness, or marked hyperactivity.

### E.     The ALJ Properly Weighed the Medical Evidence in the Record.

Plaintiff also takes issue with the ALJ's decision to assign great weight to the state agency medical consultants, George Hughes, Ph.D., Patty Higgins, SLP, James Kelly, Ph.D., Winton King, M.D., and  Carolyn Higdon, while giving some weight to Plaintiff's teacher's evaluations and the reports of the two consultative examiners, Dr. Janit and Ms. Berryhill. Pl.'s Br., pp. 9-10.   Plaintiff alleges that Ms. Berryhill and Dr. Janit's report supports a finding that Claimant has an impairment that functionally equals the severity of a listing.  (See Pl.'s Br., pp. 9-10.)

Here, the state consultants' opinions are largely consistent with both Dr. Janit and Ms. Berryhill's evaluations which were credited by the state consultants.  R. at 370, 371, 382, 383; see Edwards v. Sullivan, 937 F.2d 580, 585 (11th Cir. 1991) (finding the ALJ could rely on non-examining physician's report in denying disability insurance benefits where the report did not contradict information in examining physicians' reports); see also Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742 (11th Cir. 2011).  Although an examining physician's report is normally entitled to more weight than that of a non-examining physician, no error results when the ALJ assigns greater weight to the non-examining physician's opinion when it does not conflict with that of the examining physician. Edwards, 937 F.2d at 585.  Here, Dr. Janit's

report was fully credited in both reports made by the state consultants while only one part of Ms. Berryhill's report was not credited in the report by George Hughes, PhD., and Patty Higgins, SLP. R. at 371. This was a statement that Claimant's communication difficulties were impacting his social development. The state consultants did not fully credit this opinion given the positive teacher, peer, and sibling relationships reported by his mother and his teachers. R. at 371. Thus, in giving greater weight to the state consultants, the ALJ implicitly discredited Ms. Berryhill's opinion that Claimant's communication abilities were impacting his social development.

To the extent that Ms. Berryhill's report was inconsistent with the findings of the state consultants, the ALJ demonstrated good cause for not giving as much weight to her evaluation. See <u>Flowers</u>, 441 at 740 (using the good cause standard for giving less weight to an examining physician's report). In regards to Claimant's social development, the ALJ relied on Dr. Janit's findings that Claimant had no limitations in his ability to respond appropriately to teachers, peers, and the general public. R. at 24. The ALJ also cited Claimant's interview with Dr. Janit wherein Claimant reported getting along with others very well and denied any conduct problems. R. at 24, 364. In addition, Claimant noted that he had three friends that he socialized with approximately seven times a week. R. at 359. Claimant's teachers also noted no issues in his ability to interact with others, his ability to play cooperatively with others, and in making and keeping friends. R. at 24, 169, 187. In sum, the weight of the evidence, including Dr. Janit's report who examined Claimant, clearly contradicts Ms. Berryhill's statement about Claimant's social development. By relying on substantial evidence, the ALJ established good cause to discount Ms. Berryhill's assessment that his communication abilities

were impacting his social development.

In sum, the ALJ did not err in assigning more weight to the state consultants' reports. The state consultants' opinions are almost entirely consistent with the clinical findings of the consultative examiners. To the extent that Ms. Berryhill's report was not consistent with a small part of a state consultant's report, the ALJ demonstrated good cause for not giving as much weight to her evaluation.

### F. The ALJ Properly Determined that Claimant Did Not Have a Combination of Impairments that Functionally Equals the Listings.

Plaintiff argues the ALJ erroneously concluded that Claimant did not functionally equal the Listings based on incorrect findings that Claimant does not have a "marked" limitation in the functional domains of (1) acquiring and using information, (2) interacting and relating with others, and (3) attending and completing tasks. Pl's Br., pp. 11-14.

Functional equivalence can be found by assessing a child's overall functional limitations that result from her severe impairment or combination of impairments. 20 C.F.R. § 416.926a. In determining functional equivalence, the Commissioner must consider the impact of the child's impairment or impairments on six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do." Id. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [one]self; and (6) health and physical well-being. Id. Functional equivalence requires a "marked" limitation in two domains or an "extreme" limitation in one domain. Id. § 416.926a(a).

A marked limitation is one that "interferes seriously" with a claimant's ability to independently initiate, sustain or complete activities, while an extreme limitation is one that

"interferes very seriously" with a claimant's ability to initiate, sustain, or complete activities.  Id. §§ 416.926a(e)(2)-(3).  However, a rating of extreme is reserved for only the "worst limitations," although this "does not necessarily mean a total lack or loss of ability to function."  Id. § 416.926a(e)(3).

As to the domain of acquiring and using information, the ALJ considered the testimony of Plaintiff that Claimant had a learning disability preventing him from easily understanding and comprehending information.  R. at 22.  The ALJ also acknowledged that one of Plaintiff's teachers, Kate Mobley, indicated Plaintiff had obvious problems in comprehending and doing math questions, understanding and participating in class discussions, providing oral explanations, and applying problem-solving skills in class discussions.  R. at 22, 185.  Nevertheless, the ALJ found that Plaintiff had less than marked limitations.  R. at 22.  The ALJ cited in support Plaintiff's progress report from the first quarter of the 2012-2013 school year which revealed that Plaintiff was passing all of his classes with three A's, and four C's.  R. at 22, 247.  Additionally, overall, Plaintiff's progress reports reflected that Claimant was doing better although he required additional help and support provided by the school through the IEP.  R. at 22, 207-303.  Specifically, the ALJ considered that school progress reports from August 17, 2010 to April 13, 2011, reflected that Plaintiff continued to improve in all areas.  R. at 18.  On January 25, 2010, Plaintiff was doing much better than in the past, and he was answering more questions without delays.  R. at 18.  A note from March 22, 2011, stated that Plaintiff was really improving in all areas but that he was "silly" at times and that this affected his ability levels.  R. at 18, 231.  Progress notes from March 23, 2011 to March 22, 2012, reflected that Plaintiff was working on his goals.  R. at 18, 224.

Additionally, the ALJ cited the findings of Ms. Chiquida Brinson, a school psychologist who reviewed Claimant's eligibility for the IEP on February 15, 2012 and issued a report finding Plaintiff was functioning within the average range of intellectual functioning based on the Reynolds Intellectual Assessment. R. at 18, 274. Achievement testing indicated that Plaintiff's academic skills were in the average range and commensurate with his measured cognitive ability. R. at 18, 274. Ms. Brinson also found that (1) his behavioral ratings and observations did indicate some at-risk ratings in the area of attention/hyperactivity range that might need to be monitored, but (2) Plaintiff was functioning similar to a child with average cognitive and learning ability who may require a little more repetition to grasp and/or understand new concepts. R. at 18, 275. Claimant's progress reports and Ms. Brinson's report provide substantial evidence for the ALJ's conclusion that Claimant did not have a marked impairment in his ability to acquire and use information.

As to the domain of attending and completing tasks, the ALJ considered the testimony of Plaintiff's mother that Plaintiff had trouble with concentration and completing tasks, but found the record evidence did not support this allegation. R. at 23. The ALJ relied on Ms. Mobley's statement in a teacher questionnaire that Plaintiff had no problems in this area, and he relied on the school records and progress reports showing improvement. R. at 18, 22, 186, 224, 231, 247, 274-75. Dr. Janit also found that Claimant had only mild limitations in his ability to stay on a school schedule and complete tasks. R. at 362. The ALJ found that Plaintiff had less than marked limitations in the domain of attending and completing tasks. Given the school records, teacher's questionnaires, progress reports, and Dr. Janit's evaluation, this finding by the ALJ is supported by substantial evidence.

Finally, as to the domain of interacting and relating with others, the ALJ again properly found that Plaintiff had less than marked limitations. R. at 24. The ALJ cited Dr. Janit's finding that Plaintiff's ability to respond appropriately to teachers, peers, and the general public was not limited in that he reported getting along with others very well and denied any conduct problems R. at 24, 362. Plaintiff's teachers also reported no problems with this domain when they completed their teacher questionnaires. R. at 24, 169, 187. In citing these reasons, the ALJ properly supported his conclusion that Claimant was not markedly limited in interacting and relating with others with substantial evidence.

In sum, the ALJ carefully considered all the relevant evidence in making a reasoned determination, supported by substantial evidence in the record, concerning whether Claimant functionally equaled the listings and in concluding that Claimant did not have a "marked" limitation in acquiring and using information, interacting and relating with others, and attending and completing tasks. 20 C.F.R. § 416.926a.

**G.  Remand Is Not Warranted Under Sentence Six Because Plaintiff Has Failed to Show Good Cause or That the New Additional Evidence Is Material.**

Lastly, Plaintiff submits additional evidence without citing any case law or putting forth any argument as to why the Court should consider it. Pl.'s Br., p. 14. Plaintiff simply contends that the new evidence shows Claimant has been diagnosed with Asperger's syndrome and is disabled. Pl's Br., p. 14. The records cited by Plaintiff consist of a report dated May 2, 2013 from Karen Carter, M.D., and an undated report from Nancy Jones, a speech language pathologist. This Court can only consider new evidence for the limited purpose of determining whether the case should be remanded to the ALJ pursuant to sentence six of 42 U.S.C § 405(g). Sentence six of § 405(g) authorizes the Court "to remand a case: 'upon a showing that there is

new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Jackson v. Chater, 99 F.3d 1086, 1092 (11th Cir. 1996) (quoting 42 U.S.C. § 405(g)); see also Reynolds v. Comm'r of Social Sec., 457 F. App'x 850, 853 (11th Cir. 2012) ("The sixth sentence of 42 U.S.C. § 405(g) provides that a reviewing court may remand a Social Security case to the agency for consideration of new evidence that previously was unavailable.").  In order to demonstrate that remand is appropriate, a claimant must show:  "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level."  Enix v. Comm'r of Soc. Sec., 461 F. App'x 861, 865 (11th Cir. 2012) (citing Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986)).

In order to be material, new evidence must relate to the period on or before the date of the ALJ's decision.  See Enix, 461 F. App'x at 863 (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (providing that, in order to be probative of whether the person was disabled during the period under review, evidence must relate to that period); see also Lipscomb v. Comm'r of Soc. Sec., F. App'x 903, 907 (11th Cir. 2006) (questionnaire related to the time period under consideration by ALJ because doctor "indicated that his questionnaire answers related to his perception of [claimant's] condition as it existed prior to the ALJ's decision" by basing the opinion on both his treatment records and those from other doctors, all dated during the relevant time period).

In regards to Dr. Carter's report, Plaintiff has not shown good cause for failing to submit the report during the administrative stage.  The report is dated May 2, 2013 which is less than

one month after the deadline the Appeals Council gave to submit new and material evidence.  R. at 4-5.  In addition, the Appeals Council did not render a decision until December 9, 2013, which gave Plaintiff five months to request an extension and submit the evidence.  Plaintiff wholly failed to submit the report to the Appeals Council or request additional time to do so, and no good cause has been demonstrated or even argued by Plaintiff.

The report is also not material to the time period addressed by the ALJ's decision.  The report was rendered by Dr. Carter four months after the ALJ's decision and does not provide any indication that Claimant's diagnosis existed during the time period under consideration by the ALJ, such as by basing their conclusions on particular treatment records from that time period. Cf. Lipscomb, 199 F. App'x at 907.  In fact, the only statements related to Asperger's syndrome are largely perfunctory and do not expound on any particular functional limitations that the diagnosis may cause.  See Pl.'s Br., pp. 19-20.  Thus, this evidence does not warrant remand under sentence six of 42 U.S.C § 405(g).

As to Ms. Jones' report, it is not dated, making it virtually impossible to tell whether the report relates to the time period in the ALJ's decision.  Pl.s' Br., pp. 21-22.  The Plaintiff also does not argue that any good cause exists for not submitting the report at the administrative level. Pl.'s Br., p. 15.  Even assuming that there is good cause and that the report relates to the time period in question, the report is cumulative in that it contains essentially the same conclusions from Ms. Berryhill's report.  R. at 347.  The report does not elaborate on any particular functional limitations and simply repeats the same delay in expressive and receptive communications that Ms. Berryhill's report contains.  Thus, this evidence does not warrant remand under sentence six of 42 U.S.C § 405(g).

In sum, neither report warrants remand under sentence six of 42 U.S.C § 405(g). Good cause does not exist for failing to submit either report at the administrative level. Dr. Carter's report is also not material in that it does not relate to the time period addressed by the ALJ's decision. Ms. Jones' report is cumulative and does not provide any new evidence that the ALJ has not already considered.

IV.   **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 15th day of May, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA